UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 08-3476- White

UNITED STATES OF AMERICA

vs.

KENNETH CHATMAN,
and
CHARLES TIMOTHY BROWN,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

                Respectfully submitted,
                R. ALEXANDER ACOSTA
                UNITED STATES ATTORNEY

By: _____
H. Ron Davidson
Assistant United States Attorney
District Court No. A5501144
United States Attorney's Office
99 N.E. 4th Street, Suite 618
Miami, Florida 33132-2111
Telephone Number (305) 961-9405
Fax Number (305) 530-7976
H.Ron.Davidson@usdoj.gov

# United States District Court

SOUTHERN **DISTRICT OF** FLORIDA

UNITED STATES OF AMERICA

V.

KENNETH CHATMAN
and
CHARLES TIMOTHY BROWN

## CRIMINAL COMPLAINT

CASE NUMBER: 08-3476-White

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 14, 2008, in Miami-Dade County and Broward County, in the Southern District of Florida, KENNETH CHATMAN and CHARLES TIMOTHY BROWN did knowingly and with the intent to defraud have in their custody access device making equipment, in violation of Title 18, United States Code, Sections 1029(a)(4) and 2; and did knowingly and willfully combine, conspire, confederate and agree to, with the intent to defraud, possess fifteen or more unauthorized access devices, that is, credit card account numbers, in violation of Title 18, United States Code, Section 1029(a)(3), and to have in their custody access device making equipment, in violation of Title 18, United States Code, Section 1029(a)(4); all in violation of Title 18, United States Code, Section 1029(b)(2).

I further state that I am a Special Agent of the U.S. Secret Service and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

_____
KEVEN DUPREE, SPECIAL AGENT
UNITED STATES SECRET SERVICE

Sworn to before me, and subscribed in my presence,

Nov 14th 2008     at     Miami, Florida
Date                                City and State

PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer           Signature of Judicial Officer

## AFFIDAVIT

I, Keven Dupree, being duly sworn, do hereby depose and state the following:

1. I am a special agent with the United States Secret Service and have been so employed since June 2007. I am currently assigned to the Miami Field Office of the United States Secret Service, and my duties include the investigation of credit card fraud. I submit this affidavit based on information known to me personally from my investigation, as well as information obtained from other law enforcement officers who have investigated this matter, and other individuals who have personal knowledge of the facts herein.

2. The facts set forth herein do not constitute all the facts involved in this matter, only those that I believe are necessary to support a finding of probable cause that, on or about November 14, 2008, KENNETH CHATMAN and CHARLES TIMOTHY BROWN did knowingly and with the intent to defraud have in their custody access device making equipment, in violation of Title 18, United States Code, Sections 1029(a)(4) and 2; and did knowingly and willfully combine, conspire, confederate and agree to, with the intent to defraud, possess fifteen or more access devices which were unauthorized, that is, credit card account numbers, in violation of Title 18, United States Code, Section 1029(a)(3), and to have in their custody access device making equipment, in violation of Title 18, United States Code, Section 1029(a)(4); all in violation of Title 18, United States Code, Section 1029(b)(2).

## BACKGROUND INVESTIGATION

3. Between September 29, 2008, and November 4, 2008, United States Secret Service Agents in the Greensboro, North Carolina Resident Office compiled data of several compromised credit cards that had been used to make fraudulent purchases in Florida. That investigation revealed that

a restaurant located in Greensboro, North Carolina, was a common point of purchase for approximately fifteen credit card numbers with subsequent fraudulent transactions.

4. On October 9, 2008, agents of the United States Secret Service met with the auditor of the parent company of the restaurant. The auditor was able to determine, based on a review of the restaurant's records, that Cooperating Source 1 ("CS1") was the server for the majority of the transactions that resulted in fraudulent charges. In addition, the auditor stated that, according to the restaurant's work schedule, CS1 worked when other credit-cards were compromised.

5. On November 5, 2008, United States Secret Service Agents interviewed CS1 in a non-custodial interview in which CS1 confessed. Specifically, CS1 stated that while employed as a server at a restaurant in Miami, Florida, CS1 began "skimming" (or stealing through the use of a small electronic machine) credit cards for an individual known only as "Chief" and his brother "Greasy." Through these two individuals, CS1 became acquainted with KENNETH CHATMAN (hereinafter CHATMAN). Eventually, CS1 began skimming cards exclusively for CHATMAN.

6. In early June 2008, CS1 relocated to Greensboro, North Carolina. A short time later, CS1 contacted CHATMAN and advised him that CS1 could resume skimming credit card numbers for him. CHATMAN drove to Greensboro, North Carolina, met with CS1, and provided CS1 with a skimming device. CHATMAN agreed to pay CS1 $10.00 for each credit card number CS1 obtained. CS1 worked at a restaurant in Greensboro and in fact resumed skimming credit card numbers and providing those numbers to CHATMAN.

7. CS1 told the United States Secret Service that once CS1 skimmed a group of credit card numbers, CS1 mailed the skimmer to CHATMAN at his business address in Coral Springs, Florida, via the United States Postal Service. CHATMAN returned the electronic skimmer to CS1 via United States mail. CS1 stated that CS1 was nervous about skimming cards and had not skimmed any

additional cards since CS1's most recent receipt of a skimmer from CHATMAN.

8.      Continuing on November 5, 2008, CS1 surrendered two black electronic skimming devices to agents of the United States Secret Service Greensboro Resident Office. CS1 stated CS1 had received both electronic skimming devices from CHATMAN. One skimmer was for CS1 to use, and the second was for use by another employee which CS1 was supposed to have recruited. Unbeknownst to CHATMAN, CS1 never actually recruited any one else and did not steal additional numbers.

## CHATMAN'S EFFORTS TO HAVE A SKIMMER SENT TO BROWN

9.      CS1 told the United States Secret Service that CHATMAN contacted CS1 in the evening of November 4, 2008, to inquire about the skimmer and that CS1 told CHATMAN that things had been slow and that CS1 had not been able to get many numbers. CHATMAN instructed CS1 to send the skimming device to CHARLES BROWN at 18520 NW 67th Avenue, #213, Hialeah, Florida.

10.     Also on November 6, 2008, CS1 made a consensually monitored phone call to CHATMAN. During the partially coded conversation, CHATMAN inquired as to how many card numbers CS1 had been able to skim onto the skimming device he provided to CS1, to which CS1 replied twenty numbers. CHATMAN stated that business was really hurting and he really needed the skimmer back. He instructed CS1 to send the device to 18520 NW 67th Avenue, #213, Hialeah, Florida immediately.

11.     CHATMAN contacted CS1 again on November 7, 2008, inquiring about the electronic skimmer. CS1 told CHATMAN that CS1 had gotten sick and had been unable to make it to the post office, but would do so as soon as CS1 felt better. CHATMAN instructed CS1 to mail the device on Monday, November 10, 2008.

## CONTROLLED DELIVERY OF THE ELECTRONIC SKIMMER

12. On November 12, 2008, the United States Secret Service in Miami received the two electronic skimmers that CS1 provide law enforcement. The devices were forensically examined confirming that no credit card numbers were currently stored on them. The United States Secret Service loaded twenty spurious cards onto one of the devices. These card numbers do not correspond to actual account holders' numbers.

13. In the morning of November 14, 2008, the Honorable United States Magistrate Judge Patrick A. White issued an "Order Granting Government's Application to Install a Beeper Device and Government's Motion to Seal," in Case No. 08-3466-White. Consistent with the Court's Order, the United States Secret Service, with the assistance of other law enforcement, installed an electronically activated beeper to the package addressed to CHARLES BROWN, 18520 NW 67th Avenue, #213, Hialeah, in Miami-Dade County, Florida. On November 14, 2008, agents of the United States Secret Service and United States Postal Inspectors Service conducted a controlled delivery of the loaded skimmer to 18520 NW 67th Avenue, Hialeah, Florida, a UPS Sotre, where the skimmer was left in mailbox #213 registered in the name of CHARLES BROWN.

14. On November 14, 2008, law enforcement observed CHARLES BROWN enter the UPS Store located at 18520 NW 67th Avenue, Hialeah, Florida and open mailbox #213. Because the package was too big for the mailbox, the UPS Store left a note saying that BROWN could retrieve the package from the clerk. BROWN retrieved the package from the clerk, exited the store, and drove off in a white Dodge Ram pick-up truck. BROWN stopped twice, leaving the package in the vehicle on both occasions. On both occasions, law enforcement observed that the package remained in the vehicle untouched.

15. BROWN headed northbound until he reached Parkland, in Broward County, Florida. There,

BROWN entered the outside area of a gated apartment complex where BROWN met CHATMAN and CHATMAN's wife. A short time later, BROWN, CHATMAN and CHATMAN's wife entered the white Dodge Ram pick-up truck, with BROWN driving and CHATMAN in the front passenger seat.

16. While the truck was parked inside the gated apartment complex, the United States Secret Served received a notice from the electronically activated beeper that was previously installed on the package addressed to CHARLES BROWN, 18520 NW 67th Avenue, #213, Hialeah, in Miami-Dade County, Florida. A short time later, CHATMAN opened the passenger-side door and threw into a nearby dumpster the packaging addressed to BROWN that previously contained electronic skimmer. United States Secret Service subsequently recovered the packaging and took photographs of it. No electronic skimmer was found at the dumpster or inside the discarded packaging.

17. BROWN drove away with CHATMAN and CHATMAN's wife in the truck. Law enforcement pulled over the vehicle based on the belief that BROWN and CHATMAN possessed device making equipment, in violation of Title 18, United States Code, Section 1029(a)(4). Law enforcement asked the occupants to step out of the vehicle, which they did. Law enforcement observed an electronic skimmer (which, based on my experience, is used for storing credit card information, frequently with the intent to defraud) in the center console between the driver's side (where BROWN was previously seated) and the front passenger seat (where CHATMAN was previously seated.) Both BROWN and CHATMAN were detained. CHATMAN's wife was interviewed and released.

## POST-ARREST STATEMENTS

18. Both CHATMAN and BROWN were advised of their *Miranda* rights at the location of the arrest and again upon arrival at the United States Secret Service office in Medley, Florida. Both

agreed to talk to law enforcement without an attorney present.

19.     BROWN stated that he knew that someone from North Carolina was sending electronic skimmers to his UPS Store mailbox for BROWN to deliver to CHATMAN. BROWN stated that he received approximately three electronic skimmers for CHATMAN during the past month and a half. BROWN stated that he was not paid directly, but that CHATMAN provided BROWN with gift cards and other benefits in return. Finally, BROWN stated that he, CHATMAN and another person drove to North Carolina to deliver an electronic skimmer.

20.     CHATMAN did not confess to engaging in credit card fraud. CHATMAN stated that BROWN was supposed to help CHATMAN move some belongings from the truck.

Based on the these facts, your affiant believes that there is probable cause that, on or about November 14, 2008, KENNETH CHATMAN and CHARLES TIMOTHY BROWN did knowingly and with the intent to defraud have in their custody access device making equipment, in violation of Title 18, United States Code, Sections 1029(a)(4) and 2; and did knowingly and willfully combine, conspire, confederate and agree to, with the intent to defraud, possess fifteen or more access devices which were unauthorized, that is, credit card account numbers, in violation of Title 18, United States

Code, Section 1029(a)(3), and to have in their custody access device making equipment, in violation of Title 18, United States Code, Section 1029(a)(4); all in violation of Title 18, United States Code, Section 1029(b)(2).

FURTHER AFFIANT SAYETH NAUGHT.

_____
KEVEN DUPREE, SPECIAL AGENT
UNITED STATES SECRET SERVICE

Subscribed and sworn before me this ___ day of November 2008.

_____
PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE